OPINION OF THE COURT
Martin Marcus, J.
In this case, after giving notice of his intention to testify before the Grand Jury, the defendant failed to appear in criminal court as required and a bench warrant was issued for his arrest. Three weeks later, without the knowledge of his attorney or the prosecutor assigned to the case, the defendant reappeared before the court and the warrant was vacated. That same day, without making any attempt to notify the defendant or his attorney, the prosecutor asked the Grand Jury to consider charges against the defendant, and the Grand Jury voted to indict him. The defendant now moves to dismiss the indictment. His motion raises the question whether his failure to appear in criminal court relieved the People of their obligations to provide the defendant with an opportunity to testify before the Grand Jury and with notice, at least through his attorney, of when the defendant could do so. For the reasons set forth below, I find that the People were relieved of these obligations only if the defendant’s failure to appear in court was willful and constituted a forfeiture of his right to appear before the Grand Jury.
Relying upon the uncontested allegations of fact and transcripts of the relevant court appearances supplied to the court, I find the following facts. On July 28, 1993, the defendant and two other persons were arrested as a result of an undercover buy and bust operation. Following his arrest, the defendant was arraigned in criminal court on a felony complaint and released on his own recognizance. As required by CPL 190.50 (5) (a), the prosecutor gave notice at the defendant’s arraignment of the People’s intention to present the case to the Grand Jury. When the prosecutor then asked, "Will the *424 defendant testify?” defense counsel responded, "Yes, he will.” At the conclusion of the court appearance, the prosecutor stated, "Defendant may testify at 2:00 p.m., on August 2nd,” and the case was adjourned until that date.
On August 2, 1993, when the defendant’s case was again called, the defendant appeared and the People requested an adjournment of one week. At the defendant’s request, the case was adjourned for an additional week, to August 17, 1993. The defendant was not informed, either during the August 2nd appearance, or at any time before August 17th, that he could appear before the Grand Jury on August 17th or any other date. On August 17th, when the defendant’s case and that of his codefendant, Rafael Ortiz, were called, the defendant was not present in the courtroom. At the People’s request, the court issued a bench warrant for the defendant’s arrest, and adjourned the codefendant’s case to September 8, 1993.
The Grand Jury presentation concerning both defendants began on August 24, 1993. An indictment was voted on September 8, 1993, charging them each with one count of criminal sale of a controlled substance in the third degree and two counts of criminal possession of a controlled substance in the third degree. Sometime that same day, and although only the codefendant’s case was actually on the calendar, the defendant appeared before the court which had issued the warrant. When his presence became known, his case was added to the calendar and called in his attorney’s absence and in the presence of an Assistant District Attorney other than the one responsible for the Grand Jury presentation. Accepting the defendant’s statement that he had been in the courtroom "all day”, the court vacated the warrant, adjourned the case to September 28, 1993, and directed that the defendant’s attorney be notified. On the adjourned date, the defendant was arraigned in Supreme Court. Thereafter,[1] the defendant moved to dismiss his indictment based upon the People’s failure to notify defense counsel that the defendant’s case had been presented to the Grand Jury and their failure to provide the defendant with an opportunity to appear before it.
CPL 190.50 (5) (a) requires that the prosecutor give notice to a defendant who is the subject of an undisposed felony com *425 plaint of the prosecutor’s intent to present the matter to a Grand Jury. If the defendant responds by serving a written notice of an intention to testify before the Grand Jury, the prosecutor must then serve upon the defendant, "at the address specified by him, a notice that he will be heard by the grand jury at a given time and place” (CPL 190.50 [5] [b]), and must afford the defendant a reasonable opportunity to appear and testify.
In this case, the People note that the defendant never gave notice of his intention to testify in writing, as required by CPL 190.50 (5) (a), and insist that they did not waive their right to receive notice in that form. The People are, of course, entitled to notice " 'in the manner that the Legislature prescribes’ ” (People v Green, 187 AD2d 528 [2d Dept 1992], quoting from People v Lawrence, 64 NY2d 200, 207 [1984]; see also, People v Robinson, 187 AD2d 296, 297 [1st Dept 1992]; People v Hunter, 169 AD2d 538 [1st Dept 1991]). Nonetheless, the People may waive the requirement of a writing by accepting notice when it is given orally. (People v Young, 138 AD2d 764 [2d Dept 1988]; People v Gini, 72 AD2d 752 [2d Dept 1979].)
Since prosecutors do not often respond to oral notice of an intention to testify with explicit words of acceptance or rejection, whether a prosecutor has waived written notice must be inferred from the prosecutor’s less precise remarks. A waiver may not be inferred from ambiguous conduct. For example, when defense counsel in one case stated that the defendant " 'may wish to testify’ ”, and the prosecutor merely volunteered to contact the defendant’s attorney, the court held that the prosecutor had not thus relieved the defendant of the obligation to serve a written notice. (People v Green, 187 AD2d 528 [2d Dept 1992], supra; see also, People v Saldana, 161 AD2d 441 [1st Dept], lv denied 76 NY2d 944 [1990] [written notice necessary even though prosecutor stated he would note defendant’s oral request to testify on District Attorney’s papers].) However, when an unequivocal demand of the defendant is met with an unequivocal response by the prosecutor— for example, when the defendant says through his attorney that he will testify, and the prosecutor responds by setting a day and a time for his appearance — the prosecutor’s conduct constitutes a waiver of the requirement of written notice. (See, e.g., People v Bundy, 186 AD2d 357 [1st Dept 1992]; People v Young, 138 AD2d 764 [2d Dept 1988].)
In this case, although the defendant’s attorney had only made an oral announcement of the defendant’s intention to *426 appear before the Grand Jury, the People unconditionally informed the defendant that he could do so on August 2, 1993, at 2:00 p.m. Under these circumstances, the defendant could reasonably rely on the prosecutor’s offer, and the prosecutor’s conduct constituted a waiver of written notice. Having then failed to provide the defendant with the opportunity to testify on August 2nd, the prosecutor was required to give the defendant a new notice, indicating the subsequent date and time when the defendant could appear before the Grand Jury. (People v Martinez, 111 Misc 2d 67 [Sup Ct, Queens County 1981].)[2] Then, on August 17, 1993, when the defendant failed to appear, the People made no attempt to renounce their previous acceptance of the defendant’s oral notice, but merely requested and received a bench warrant for the defendant’s arrest. Thus, they may not now rely on the lack of a written demand from the defendant as a justification for their failure to provide him with the notice required by CPL 190.50 (5).
Obviously, the mere fact that the defendant was not present in court on August 17th did not prevent the prosecutor from informing the defendant’s attorney of a time when the defendant could appear before the Grand Jury. Whether or not the defendant himself ultimately learned of his scheduled appearance such notice to his attorney would have satisfied the People’s statutory obligation. (See, People v Helm, 51 NY2d 853 [1980].) Moreover, given the defendant’s presence in court on September 8th, it is apparent that he was available to testify, if not on that day, then shortly thereafter. The question remains whether the defendant’s failure to appear on August 17th, followed by the issuance of the bench warrant, ended the People’s obligation to provide the defendant, through his attorney, with notice of an opportunity to testify before the Grand Jury and an opportunity to do so.
A defendant may terminate a right in two different ways: either by waiver or forfeiture. (People v Corley, 67 NY2d 105 [1986].) In this case, the defendant clearly did not waive his *427 rights to notice and an opportunity to appear, and he forfeited them only if his failure to appear in court on August 17th was willful.
At least one court has held that merely by failing to return to court a defendant does not waive his right to notice of his scheduled Grand Jury appearance. In People v Gray (158 Misc 2d 597 [Sup Ct, NY County 1993]) the defendant, whose prior indictment was dismissed for failure to provide him with an opportunity to testify before the Grand Jury, failed to appear in court for subsequent proceedings. More than a month later, the defendant was reindicted, without prior notice of the new presentation to either the defendant or his attorney. The court accepted, on the one hand, the prosecutor’s good-faith belief that giving such notice to the missing defendant’s attorney would have been "a futile gesture”, and recognized, on the other, that, "there was always the possibility, as remote as it may appear to have been, that counsel would have been able to contact defendant.” (158 Misc 2d, at 599.) Noting that strict adherence to the notice requirement was required, the court rejected the "novel” argument that the defendant’s failure to appear constituted a waiver of his right to notice, and dismissed the indictment for failure to provide it. (Supra.)
Of course, a waiver analysis must focus on the particular right a defendant is alleged to have waived, determining whether the defendant was aware of that particular right, and knowingly, voluntarily and intelligently waived it. (See, People v Epps, 37 NY2d 343, 350 [1975].) In People v Parker (57 NY2d 136 [1982]), for example, the Court of Appeals held that a defendant who failed to appear the day her trial was scheduled to occur did not waive her right to be present at the trial, since there was no evidence that the defendant had been informed that the trial would proceed in her absence. Similarly, in this case the defendant was not told that he would receive notice of the time and place of his Grand Jury appearance only by being present in the courtroom on August 17th or thereafter. Nor was he informed that by failing to appear on the adjourned date he would thus waive his right to receive notice or to appear before the Grand Jury. Thus, in these circumstances, if the defendant relinquished his rights under CPL 190.50 (5), it can only be because he forfeited them.
In People v Corley (67 NY2d 105, 110 [1986], supra), the Court of Appeals explained the difference between waiver and forfeiture, noting that, "Whereas waiver results from a knowing, voluntary and intelligent decision, forfeiture occurs by *428 operation of law, based on objective facts and circumstances and without regard to the defendant’s actual state of mind.” Thus, "the forfeiture of a right may occur even though a defendant never made an informed, deliberate decision to relinquish that right.” (People v Parker, 57 NY2d 136, 140 [1982], supra.) In Parker, the People argued that whenever a defendant is informed of a trial date and voluntarily fails to appear, a forfeiture occurs as a matter of law. The Court of Appeals rejected the argument, reasoning that because a defendant’s right to be present at trial is "of a fundamental constitutional nature”, the right could be relinquished only by a knowing, voluntary and intelligent waiver. (57 NY2d, at 140-141.)
In People v Sanchez (65 NY2d 436, 444 [1985]), however, the Court clarified its ruling in Parker (supra), explaining that Parker’s conduct did not constitute a forfeiture of her right to be present because it was not a sufficiently unambiguous "defiance of the processes of law.” In contrast, the Court considered in Sanchez the cases of several defendants who were tried in absentia, after a finding that each had willfully absconded during the course of the trial, or had failed to appear knowing that the trial was about to begin. Such conduct, said the Court, "unambiguously indicates a defiance of the processes of law and * * * disrupts the trial after all parties are assembled and ready to proceed.” (Supra.) By such conduct, the Court held, each defendant forfeited his right to be present at trial.
Finally, in People v Corley (67 NY2d 105 [1986], supra), a defendant’s conviction was vacated by the trial court, but was later reinstated on appeal. Thereafter, the defendant failed to appear for further proceedings in the trial court, which, after finding his absence to be willful, sentenced him in absentia. Relying upon Sanchez (supra), the Court of Appeals held that the defendant had forfeited his right to be present for sentencing, even though it was unlikely sentence would have been imposed on the day he had failed to appear.
Unlike the right at issue in Parker and Sanchez (supra) — the defendant’s constitutional right to be present at trial, the Grand Jury rights in question here are purely statutory. Although the State Constitution establishes a defendant’s right to presentation of a felony case to a Grand Jury, it does not require that the defendant be afforded an opportunity to *429 appear before it. (See, NY Const, art I, § 6.) Moreover, as a matter of Federal constitutional law, "A state is not required to create a right to testify before a grand jury. Indeed, there is no federal right with respect to state prosecutions even to be indicted by a grand jury, much less to appear before one [citations omitted].” (Saldana v State of New York, 665 F Supp 271, 275 [SD NY 1987], revd on other grounds 850 F2d 117 [1988], cert denied 488 US 1029 [1989].)
In any case, if the defendants in Sanchez (supra) could forfeit their constitutional right to be present at their trials by willfully absconding immediately prior to or after those trials began, so the defendant in this case could forfeit his statutory right to appear before the Grand Jury by willfully absconding before having done so. Moreover, just as the defendant in Corley (supra) could forfeit his right to be present at sentencing by willfully absconding on a day when sentencing was not likely to occur, so could this defendant forfeit his right to notice and an opportunity to appear before the Grand Jury, even though it was unclear whether either would have been provided on the particular day the defendant failed to appear. Given that the Grand Jury presentation could be expected to occur, if not on the adjourned date, then shortly thereafter, if the defendant willfully absconded, it is irrelevant that his attorney remained behind to accept notice, since the defendant’s "defiance of the processes of law” (People v Sanchez, 65 NY2d 436, 444 [1985], supra) terminated not only his right to appear, but also his right to notice, even indirectly, through his attorney.
The defendant claims that, regardless of his failure to appear on August 17th, once he made his presence known in the courtroom on September 8th, he was entitled to an opportunity to testify before the Grand Jury. In making this argument, the defendant does not challenge the People’s assertion that the prosecutor who presented the case on September 8th had no knowledge of the defendant’s return to court that same day. Instead, the defendant argues that the prosecutor assigned to the case was on constructive notice of the defendant’s availability to testify because another prosecutor was in the courtroom when the defendant’s case was called, even if— as is likely — that other prosecutor had no knowledge of the status of the case or of the impending Grand Jury proceeding.
It is unclear whether the defendant’s presence in the court *430 room became known before the Grand Jury vote.[3] In any case, assuming that the defendant willfully failed to appear on August 17th, his claim of constructive notice would fail whatever the order of events proved to be. Having previously forfeited his rights under section 190.50 (5), his mere presence in the courtroom on September 8th, without more, would not be sufficient to reinstate those rights and preclude the assigned prosecutor, then unaware of his reappearance, from completing the Grand Jury presentation and asking the Grand Jury to take action.[4]
Accordingly, whether or not the defendant’s motion to dismiss should be granted turns on whether or not his failure to appear on August 17th was a willful "defiance of the processes of law.” While it appears from the transcript of the proceedings on September 8, 1993, that the defendant returned to court voluntarily that day, that fact is not determinative of the defendant’s purpose in failing to appear on August 17th. Accordingly, a hearing is ordered for the purpose of making that determination.

. Although the motion was made more than five days after the defendant’s arraignment (see, CPL 190.50 [5] [c]), it is nonetheless timely, having been filed within the extended period requested from and given by the Judge before whom the defendant was arraigned. (See, People v Mason, 176 AD2d 356, 358 [1st Dept 1991].)

. Here the defendant’s failure to testify on August 2, 1993, was attributable solely to the prosecutor, and . did not call into question his previously stated intention to appear before the Grand Jury. In contrast, in People v Theard (155 Misc 2d 475 [Sup Ct, Queens County 1992]), a Grand Jury presentation was postponed twice and finally occurred on the third scheduled date. The defendant, who had requested an opportunity to appear before the Grand Jury, received notice of the first two dates, and had on each occasion failed either to appear or to request an adjournment. Although he received no notice of the third date, the court held that by his prior conduct, he had waived his right to such a notice.

. Neither the defendant nor the prosecutor make allegations concerning the order of the events of September 8th: when the defendant first appeared in the courtroom, when his presence was noted and his case called, and when the indictment was voted. Obviously, if the Grand Jury voted to indict the defendant before his presence became known to even the prosecutor then in the courtroom, the defendant’s claim of constructive notice before the vote would be moot.

. The defendant here asserts a right to appear before the Grand Jury before it voted. Assuming this right was not forfeited, it would not have been satisfied by an opportunity to testify after the Grand Jury voted, but before the indictment was filed. (People v Evans, 79 NY2d 407 [1992].) The defendant makes no alternative claim that the prosecutor knew, or should have known, of the defendant’s return after the vote but before the filing of the indictment, and that — even if the defendant was not entitled to testify before the vote — should have been afforded an opportunity to testify before the indictment was filed. (See, People v Young, 138 AD2d 764 [1988].)